S12A2076. VATACS GROUP, INC. v. U. S. BANK, N.A.
(738 SE2d 83)

BLACKWELL, Justice.

U. S. Bank, N.A. and Vatacs Group, Inc. both claimed title to certain residential real property in Fulton County, and U. S. Bank filed a petition to quiet title to the property. The trial court appointed a special master, and after an evidentiary hearing, the special master found that U. S. Bank had good fee title to the property, that Vatacs had no interest in the property, and that, even if Vatacs had some interest in the property, the doctrine of equitable subrogation rendered the interest of U. S. Bank superior to any interest of Vatacs. The trial court adopted the findings of the special master and entered judgment vesting fee title to the property in U. S. Bank. Vatacs appeals, contending that the case should have been tried by a jury and that the findings of the special master are erroneous. We find no merit in these claims of error, and we affirm the judgment below.

1. We turn first to the question of a jury trial. To quiet title to real property, one may seek relief under the procedures and standards for conventional quia timet, see OCGA § 23-3-40 et seq., or under those for quia timet against all the world, see OCGA § 23-3-60 et seq. When one seeks conventional quia timet, he is not entitled to trial by jury. OCGA § 23-3-43. See also *Johnson v. Red Hill Assoc.,* 278 Ga. 334, 335 (2) (602 SE2d 572) (2004) ("[I]f this action is properly a conventional quia timet action, [the appellant] had no right to a jury trial."). When one seeks quia timet against all the world, however, he is

entitled by the provisions of OCGA § 23-3-66 to a jury trial. *Gurley v. East Atlanta Land Co.*, 276 Ga. 749, 750 (1) (583 SE2d 866) (2003). In this case, although U. S. Bank sought both conventional quia timet and quia timet against all the world in its original petition, it later amended its petition "to omit [its] reference to and prayer for relief under OCGA [§] 23-3-60,"[1] and the subsequent proceedings before the special master focused on the specific cloud on title that resulted from the interest claimed by Vatacs.[2] Accordingly, by the time the case was heard by the special master, it was both nominally and substantively an action only for conventional quia timet, and Vatacs had no right to trial by jury. See *Johnson*, 278 Ga. at 335 (2). See also *Karlen v. Reliance Equities*, 291 Ga. 549, 550 (2) (731 SE2d 683) (2012); *Fitzpatrick v. McGregor*, 133 Ga. 332, 336-337 (1) (65 SE 859) (1909) (no right to jury trial when suit at law is converted by amendment into an equitable proceeding). The trial court did not err when it failed to submit the case to a jury.

2. We turn next to the contention that the findings of the special master, which were adopted by the trial court, are erroneous. It appears undisputed that AMG Mortgage Corporation had good title to the property in question as of January 2004, when it conveyed title to Michael Suit by warranty deed. Based on evidence admitted at the hearing, the special master found that Suit conveyed title back to AMG Mortgage in March 2006 by quitclaim deed, which Vatacs disputed below, but does not appear to dispute on appeal.[3] It appears

---

[1] Vatacs does not contend that this amendment was untimely or otherwise improper. See OCGA § 9-11-15 (a); *Woodruff v. Morgan County*, 284 Ga. 651, 651-652 (1) (670 SE2d 415) (2008) (Civil Practice Act applies in quiet title action to the extent that its provisions do not conflict with other rules of practice and procedure that specifically govern quiet title actions).

[2] U. S. Bank also sought to quiet title against certain potential tax liens on the property, and counsel for the county tax commissioner appeared at the hearing and indicated that no outstanding taxes then were owed on the property. Besides finding that U. S. Bank had good title as against Vatacs, the special master also found that the title of U. S. Bank was subject to tax liens only to the extent that "outstanding claims for taxes . . . may hereafter arise." That the judgment may bind not only Vatacs, but also the county tax commissioner, does not mean that it binds all the world.

[3] U. S. Bank was unable to produce this quitclaim deed at the hearing, but Suit testified that he executed the deed and delivered it to AMG Mortgage, and he testified about the circumstances surrounding the execution of the deed. There also was evidence that a diligent search for the deed had been undertaken, but the deed could not be located. Based on this evidence, the special master concluded that he properly could consider parol evidence to establish the existence and terms of the lost deed. See OCGA § 24-5-21. See also *Sharp v. Autry*, 185 Ga. 160, 168-169 (2), 169-170 (on motion for rehearing) (194 SE 194) (1937); 2 Daniel F. Hinkel, Ga. Real Estate Law & Procedure § 23-111 (6th ed.). Considering such parol evidence, the special master found that Suit had, in fact, conveyed title to the property back to AMG Mortgage in March 2006. On appeal, Vatacs fails to challenge this finding, and instead admits in its statement of facts that, "in March of 2006[,] Suit conveyed the property back to AMG [Mortgage] via a quitclaim deed."

undisputed that AMG Mortgage subsequently conveyed title to Carl McDade, Sr., in April 2007 by quitclaim deed, that McDade contemporaneously executed a security deed in favor of Homecomings Financial, LLC, that Homecomings Financial foreclosed on the property in March 2009, and that U. S. Bank purchased the property at foreclosure. Based on these conveyances and transactions, the special master concluded, U. S. Bank had good fee title to the property.

Vatacs claimed title to the property by a quitclaim deed from Suit to Vatacs in April 2006. Apart from the fact that Suit by then had no interest in the property to convey to Vatacs because he earlier had conveyed title back to AMG Mortgage, the special master found that the April 2006 quitclaim deed to Vatacs was forged and, therefore, passed no title in any event. It is settled law that "[a] forged deed is a nullity and vests no title in a grantee." *Aurora Loan Svcs. v. Veatch*, 288 Ga. 808, 809 (710 SE2d 744) (2011). In this case, Suit made an affidavit of forgery with respect to the quitclaim deed to Vatacs, and other evidence admitted at the hearing showed that Suit had no contract with Vatacs, that he did not personally deliver the deed to Vatacs, that the deed was delivered to Vatacs instead by a person who, Vatacs concedes, forged other documents, and that the deed was not signed by anyone as a witness until after its delivery, and even then, the witness signed outside the presence of Suit. This evidence supports the finding by the special master of forgery, a finding that Vatacs does not dispute on appeal. See *Roberts v. Scott*, 211 Ga. 527, 529 (3) (a), (b) (87 SE2d 67) (1955); 2 Ga. Real Estate Law & Procedure, supra, § 23-118. From that finding, the conclusion of the special master that Vatacs had no interest in the property naturally and logically follows. See *Veatch*, 288 Ga. at 809.

The special master properly concluded that U. S. Bank had good title to the property and that Vatacs had no interest in it at all, and that is all we need to know to affirm the judgment below. The special master went further and concluded in the alternative that, even if Vatacs had some interest in the property, the doctrine of equitable subrogation would render the interest of U. S. Bank superior to any interest of Vatacs. On appeal, Vatacs focuses principally on this conclusion, arguing that the special master misapplied the principles of equitable subrogation in several respects. But we need not consider those arguments because equitable subrogation is a doctrine that goes to the superiority of competing, valid interests in property, and it has no application where one party has good title, and the other has

no interest at all.[4] See *Chase Manhattan Mtg. Corp. v. Shelton*, 290 Ga. 544, 549 (4) (722 SE2d 743) (2012); *Byers v. McGuire Properties*, 285 Ga. 530, 536 (4) (679 SE2d 1) (2009). Vatacs also argues on appeal that it never conveyed title back to AMG Mortgage, such that AMG Mortgage had no title to convey to McDade, but this argument assumes that Vatacs had title in the first instance, an assumption that is belied by the finding of the special master that the quitclaim deed from Suit to Vatacs was forged. See *Veatch*, 288 Ga. at 809. Finally, Vatacs argues that, when Suit conveyed title back to AMG Mortgage by the March 2006 quitclaim deed, AMG Mortgage intended that Vatacs acquire title to the property. But execution and delivery of a valid deed is necessary to convey title, see *Smith v. Lockridge*, 288 Ga. 180, 183-184 (3) (702 SE2d 858) (2010), and the mere intent of AMG Mortgage as a grantee is insufficient to pass title on to Vatacs. See *Harvey v. Bank One*, 290 Ga. App. 55, 58 (1) (658 SE2d 824) (2008).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 4, 2013 —
RECONSIDERATION DENIED MARCH 4, 2013.

*Stevens & Stevens, Ronald S. Stevens, Jillian L. Harmon*, for appellant.

*Weissman, Nowack, Curry & Wilco, Jeffrey H. Schneider*, for appellee.

---

[4] We may affirm the judgment below if it is right for any reason, and we need not address the issues raised by Vatacs about equitable subrogation. See *National Tax Funding v. Harpagon Co.*, 277 Ga. 41, 45 (4) (586 SE2d 235) (2003); *DeGolyer v. Green Tree Servicing*, 291 Ga. App. 444, 447 (2) (662 SE2d 141) (2008).